UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CORY K. JOHNSON,

      Petitioner,

v.                                            Case No. 1:17cv315-AW-HTC

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Petitioner Cory K. Johnson's habeas corpus petition under 28 U.S.C. § 2254, challenging his judgment and conviction for lewd and lascivious battery on a person under age sixteen (16) in Alachua County circuit court case 2014-CF-1062A. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the State's response with exhibits (ECF Doc. 27), and Johnson's reply at ECF Doc. 49,[1] the undersigned recommends the petition be DENIED without an evidentiary hearing.

_____

[1] In ECF Doc. 49, Johnson requested the Court to consider his belated reply contained within that filing. In the order at ECF Doc. 50, the Court noted that the reply was not late because the Court had already granted an extension of time to reply. The Court thus denied the motion at ECF Doc. 49 as moot but indicated "the part of ECF Doc. 49 which contains his arguments in response to

## I.    BACKGROUND

### A.    Offense And Conviction

On March 22, 2014, thirteen-year-old female K.A.R. was on probation and wearing a GPS ankle monitor.  ECF Doc. 27-3 at 89-90.  Department of Juvenile Justice officials tracking her noticed that she was at the Knights Inn in Gainesville, Florida, and sent police to check on her welfare.  *Id.* at 97.  An officer drove up to the Knights Inn and noticed K.A.R., with an ankle monitor, walking in the motel's parking lot toward the street.  *Id.* at 89-91.

When approached, K.A.R. first told officers that she was staying with her mother at the hotel and produced a room key.  *Id.* at 98.  The officers took the room key to the manager of the hotel who determined that defendant Cory Johnson, a thirty-seven-year-old man, had rented the room.  The manager produced a photocopy of Johnson's driver's license and gave it to police.  *Id.* at 99-101.

The motel manager then asked the officers to check the room, to make sure that no one was in there.  The officers and the manager went to the room, and the manager opened the door for them.  With "verbal consent from the manager," an officer went in the room to check for occupants and found no one.  *Id.* at 93-94.  The officer did not disturb anything in the room or open any containers.  Once it was

---

the State's answer to the petition will be considered the Reply in this case as contemplated by Rules governing § 2254 Cases, Rule 5(e)."  Nevertheless, in ECF Doc. 53, Johnson moved the Court to clarify whether the Court had issued a ruling on ECF Doc. 49.  As explained, the Court has mooted the motion at ECF Doc. 49 but considered the arguments therein as the Reply.

established that no one was in the room, the door was closed, and the premises sealed and guarded. *Id.* at 103.

Investigators then confronted K.A.R. with their discovery that Johnson – and not her mother -- had rented the room, and she admitted that her initial story was untrue. Instead, she admitted that she had met a man at a gas station, got into his car, rode with him to the motel, and on the way discussed engaging in sexual activities for money. *Id.* at 101-02. K.A.R. admitted that they arrived together to rent the room but that the man had instructed her to wait in his car while he went in, alone, to rent the room. *Id.* at 102.

K.A.R. did not initially admit that sexual intercourse had occurred. *Id.* at 103-104. Investigators arrested her for violation of probation and began driving her to the juvenile justice center, during which ride K.A.R. admitted that sexual intercourse had, in fact, taken place. Investigators, therefore, changed course and took K.A.R. to a medical exam, where a rape kit was assembled, including a buccal swab containing her DNA.

During this time, K.A.R. revealed that after entering the motel room, Johnson instructed K.A.R. to shower while he went to get a haircut. ECF Doc. 27-1 at 374. Johnson then left K.A.R. in the room with the key. He returned to the room, the two smoked marijuana and had vaginal intercourse, and then he left again. He gave her $25 dollars and the room key and told her she could use the room and he would return "that evening" to engage in more sexual activity for $250. *Id.* at 374-81.

K.A.R. left the room to return to her mother's job at Dollar General, where she was supposed to have been. As described above, she was approached by police as she was leaving the motel.

After learning that they had arrived together to rent the room, that K.A.R. was left in control of the room by Johnson, and that she was given the key by Johnson, investigators asked K.A.R. to sign a written consent form to search the room. K.A.R. signed the consent form, and officers with the crime scene forensics unit thoroughly searched the room. Among other things, they found a used condom which was later determined by DNA testing to contain Johnson's sperm and K.A.R.'s epithelial cells. ECF Doc. 27-2 at 145-47 (trial testimony of FDLE DNA analyst that sperm fraction of fluid from condom matched Johnson's DNA with a probability of 1 in 1.5 sextillion and the epithelial fraction contained a profile that matched K.A.R.'s DNA with a probability of 1 in 39 quintillion).

Petitioner was convicted by a jury of lewd and lascivious battery of a child under 16 years of age but acquitted of a charge of delivering controlled substance to a minor. ECF Doc. 27-1 at 180-182. He was sentenced to twelve (12) years' imprisonment and three years' sex offender supervision. *Id.* at 184.

### B.    Postconviction History

Johnson filed a timely notice of appeal, raising two grounds of trial court error. ECF Doc. 27-3 at 141. The First DCA, in case 1D15-2183, issued a *per curiam*

affirmance without written opinion on June 24, 2016, ECF Doc. 27-3 at 222, and denied Johnson's motion for rehearing on September 28, 2016.[2]

Johnson then filed a motion under Fla. R. Crim. P. 3.850 by delivering it to prison mail officials on October 5, 2016. ECF Doc. 27-3 at 245. In it he raised four claims, the two raised in his direct appeal and two more: (1) trial counsel was ineffective for failing to withdraw due to a conflict of interest and (2) the trial judge made an improper comment during sentencing. *Id.* The trial court denied the motion on October 17, 2016, rejecting the ineffectiveness claim on the merits and finding the three trial-court-error claims procedurally defaulted because they were raised, or should have been raised, on direct appeal. *See* ECF Doc. 27-3 at 270.

Johnson's motion for rehearing was denied, ECF Doc. 27-4 at 35, and Johnson filed a timely notice of appeal. *Id.* at 38. The First DCA, in case number 1D16-5138, affirmed *per curiam* without written opinion and issued a mandate on February 28, 2017. *Id.* at 43. The instant petition was delivered to prison mail officials on December 18, 2017. ECF Doc. 1.

## C.   Timeliness

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a § 2254 petition must

---

[2] *See* First DCA online docket, available at:
http://onlinedocketsdca.flcourts.org/DCAResults/LTCases?CaseNumber=2183&CaseYear=2015&Court=1

be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[3]  The Secretary does not object to the timeliness of the petition, and a review of the history of this case indicates that the petition is timely filed.   Indeed, because Johnson's 3.850 motion was filed before his judgment became final, his time to file the instant petition under the AEDPA was tolled until February 28, 2017.[4]  Also, because the instant petition was filed less than ten (10) months later, the petition is timely.

## II.    STANDARDS OF REVIEW

### A.    Federal Review Of State Court Decision

Under the standard of review for a § 2254 motion, this Court should not  grant habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the *Williams* framework,

---

[3] Although there are other "trigger" dates under the AEDPA, none of those apply here.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

[4] Johnson's judgment became final under the AEDPA on December 27, 2016.  *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)").

a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Additionally, when an issue is raised to the state appellate court, but no written decision is issued, this Court should look through that unwritten decision to the last related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**B**.    **Legal Standard For Ineffective Assistance Of Trial Counsel**

Johnson's petition includes a claim of ineffective assistance of trial counsel ("IATC").  ECF Doc. 1.  To prevail on this claim, Johnson must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that she show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694.  To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)).  However, a court need only address one prong, and if it is found unsatisfied, the analysis ends. *Id.*

## III.   DISCUSSION

Petitioner raises three (3) grounds of trial court error, which were raised in his direct appeal, Rule 3.850 motion, or both.  Thus, issues of exhaustion and procedural default are not involved in this case.  As discussed below, however, the undersigned

finds that Petitioner is not entitled to relief as to the merits on any of the grounds raised.

### A.    Ground One: Trial Court Error For Failing To Conduct *Faretta* Inquiry

During the lead up to his trial, Petitioner requested a hearing under *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973),[5] arguing that his counsel suffered a conflict of interest because the lawyer (1) did not communicate sufficiently; (2) did not file motions requested by petitioner; and (3) did not "back up" the motions filed by Johnson *pro se*.  ECF Doc. 27-1 at 89-91.  The Court held a *Nelson* hearing on July 30, 2014, at which Petitioner testified.  ECF Doc. 27-3 at 57.  Petitioner claims the trial court should also have conducted a hearing under *Faretta v. California*, 422 U.S. 806 (1975), based on his "unequivocal request for self-representation" made at the beginning of the *Nelson* hearing, and it was "per se reversible error and a new trial is warranted."  ECF Doc. 1 at 6.  The Secretary counters that Petitioner merely complained about his counsel and sought replacement counsel but never made a request for self-representation clearly and unequivocally.

---

[5] In *Nelson*, Florida's Fourth District Court of Appeal held that if an indigent defendant expresses a desire to discharge court-appointed counsel because of counsel's ineffectiveness, the trial court must hold a hearing to determine whether there is reasonable cause to believe that the court-appointed counsel is not rendering effective assistance to the defendant.  *See Johnson v. Sec'y, Fla. Dep't of Corr.,* 2020 WL 2114652, at *6 (M.D. Fla. May 4, 2020).

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court recognized that the Constitution contains a right to self-representation for criminal defendants seeking to proceed to trial without an attorney. *See id.* at 819-20, 832-33. To represent oneself, a defendant must "knowingly and intelligently" waive the benefits typically associated with the right to counsel. *Id.* at 835. A "trial court's obligation to conduct a '*Faretta* hearing,' at which a defendant is 'made aware of the dangers and disadvantages of self-representation[,]' is triggered by the defendant's 'clear and unequivocal assertion of a desire to represent himself.'" *Gill v. Mecusker*, 633 F.3d 1272, 1293 (11th Cir. 2011).

However, "[i]n recognition of the thin line that a district court must traverse in evaluating demands to proceed *pro se*, and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record," the Eleventh Circuit "has required an individual to clearly and unequivocally assert the desire to represent himself." *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). Therefore, to trigger the requirement of a *Faretta* hearing, a defendant must state his request for self-representation "either orally or in writing, unambiguously to the court so that no reasonable person can say that the request [to proceed pro se] was not made." *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986).

As noted above, Johnson raised the *Faretta* issue on direct appeal and also in his Rule 3.850 motion. However, because the First DCA affirmed without written

opinion and the lower court denied the motion as procedurally barred, there is no written state court opinion.  In *Harrington v. Richter,* 562 U.S. 86, 100 (2011), the Supreme Court made clear that the state court need not issue an opinion explaining its rational for the decision to qualify as an adjudication on the merits.  Instead, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *See id.* at 98.  As explained below, there was indeed a reasonable basis for the First DCA to deny relief on this ground, namely, that Johnson did not make an unequivocal request to represent himself.

To the contrary, in the Motion for *Nelson* Inquiry, Johnson made the opposite representation, stating as follows:

> Again: **defendant do not want to represent his self** but do not want counsel, Mr. "Lloyd Vipperman," to represent him in this case because of conflict of interest and ineffective [assistance] of counsel. . . .  I certify that this motion is made in good faith on reasonable grounds to believe that defendant has received ineffective assistance of counsel and may be therefore **entitled to substitute counsel** as provided by law.

ECF Doc. 27-1 at 90 (grammar and syntax as in original, emphasis added). Similarly, during the *Nelson* hearing, Johnson reiterated that he did not want represent himself.  He stated, "And I don't – I wish now to represent to myself. Because I don't have an MA or BA, but I need somebody that's going to help me build a defense, and not nobody that's against me."  ECF Doc. 27-3 at 59.

The state court went through the grounds given in the motion and found that the discovery motions requested by Johnson were premature, that counsel properly declined to file them, that discovery was not being withheld from the defense and that "[i]t appears your attorney is doing everything that he should do up to this point. So I'm going to deny your motion." *Id.* at 66. The judge then predicted that as "the case unfolds, you'll get more and more information about what's happening" but that the attorneys had many cases and will not come out to the jail when "they don't have anything to tell you." Thus, the judge denied Johnson's request for substitute counsel, and Johnson acquiesced in keeping Vipperman. Additionally, although the judge allowed Johnson to bring up other issues by asking him "where are we right now with this case," and Johnson mentioned he had filed a motion for bond reduction, he did not raise the issue of self-representation. ECF Doc. 27-3 at 67-68.

Johnson clearly did not make an unequivocal request for leave to represent himself during the *Nelson* hearing. First, he sought new counsel. Second, he stated he did not want to represent himself. Third, he eventually agreed to continue with his current counsel after the state court explained why current counsel was not ineffective. Nothing that Johnson told the state court triggered a *Faretta* hearing. Moreover, even had Johnson made it clear earlier in the hearing that he wanted to represent himself, his agreement to continue with his current counsel was a waiver of his *Faretta* rights. *See Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) ("Even if defendant requests to represent himself, . . . the right may be waived

through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request all together"); *Gill v. Mecusker*, 633 F.3d 1272, 1296 (11th Cir. 2011) ("Gill's statements at the subsequent hearings regarding the motion were qualified and conditioned in such a way as to render his request equivocal.").

Because Johnson has failed to show that the state court's denial of relief on this ground had no reasonable basis, Johnson is not entitled to habeas relief on this claim.

### B.    Ground Two: Trial Court Error For Denying Petitioner's Motion To Suppress Evidence Gained During Search Of Motel Room

On December 12, 2014, Johnson, through counsel, filed a motion to suppress all evidence "obtained from or derived directly or indirectly from the warrantless search of room #171 at the Knights Inn in Gainesville, Florida on March 22, 2014." ECF Doc. 27-1 at 128.  The trial judge denied the motion to suppress in open court, after an evidentiary hearing.  *Id.* at 133-37.

In the instant petition, Johnson argues the trial court erred in denying the motion because (1) K.A.R. changed her story to the officers several times; (2) she never provided the officers with a room number and did not know to which room the key card belonged; (3) she was thirteen years old and under arrest when she gave consent; (4) she had absconded from her mother's custody and was on probation; and (5) "could not even provide law enforcement with [Johnson's] full name." Johnson concluded by asking, "How could this child share any 'common authority'

to search [the] hotel room when it is clear she was not suppose[d] to be [there]?"
ECF Doc. 1 at 9.

The Secretary responds that Petitioner fails to state a claim for relief that can
be granted via a federal habeas petition because Fourth Amendment claims are not
cognizable in federal habeas proceedings. ECF Doc. 27 at 22-23. Johnson, in his
reply, counters that these claims are cognizable in federal habeas relief because he
was not provided a "full and fair opportunity" to litigate his Fourth Amendment
claims in state court because the state court hearing was "nothing more than a sham."
ECF Doc. 49 at 6-7. The undersigned disagrees and finds that this claim is barred
from federal habeas review.

If the state affords a defendant a full and fair opportunity to litigate the validity
of a search or seizure, "a state prisoner may not be granted federal habeas corpus
relief on the ground that evidence obtained in an unconstitutional search or seizure
was introduced at his trial." *Hearn v. Florida*, 326 F. App'x 519, 521 (11th Cir.
2009) (per curiam) (quoting *Stone v. Powell*, 428 U.S. 465, 494 (1976)). An
opportunity in this context has been described as one evidentiary hearing in the trial
court and the availability of a meaningful appeal. *Bradley v. Nagle*, 212 F.3d 559,
565 (11th Cir. 2000) (quotation and citation omitted), *cert. denied*, 531 U.S. 1128
(2001).

Contrary to his assertions, Johnson was provided a full and adequate
opportunity to litigate his Fourth Amendment claim in the state courts. The trial

court held an evidentiary hearing in which the officers and investigators who interacted with K.A.R. at the Knights Inn, and the crime scene investigator who processed the room, testified and were subject to cross-examination. Specifically, the investigator who interviewed K.A.R. and obtained her written consent to search the room refuted each of Johnson's concerns about K.A.R.'s ability to consent. With regard to K.A.R.'s authority over the room, the investigator testified that K.A.R. told her that Johnson had left the room, said that he was going to be back later that evening and that Johnson told her she could continue to use the room. K.A.R. also had the room key in her possession. Also, the investigator testified that she showed and explained to K.A.R. a Consent to Search form and reasonably believed that K.A.R. knowingly and voluntarily consented to the search. ECF Doc. 27-3 at 105-07.

Based on the testimonies presented, the trial court denied the motion, finding that officers reasonably believed that K.A.R. had actual or apparent authority over the room and gave consent for the officers to search the room. ECF Doc. 27-3 at 87-137 (transcript of the hearing, with the court's ruling at pp. 133-37). Therefore, Petitioner was not only given an opportunity to litigate his Fourth Amendment claims in an evidentiary hearing, he vigorously took advantage of that opportunity through counsel.

Because Petitioner had a full opportunity to present this argument to the state courts, the arguments he raises now regarding why the trial court should have ruled

differently are not subject to habeas review. *See Bradley v. Nagle*, 212 F.3d 559, 564–65 (11th Cir. 2000) (a federal court is "precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided 'an opportunity for full and fair litigation' of those claims" because "so long as a defendant has had the opportunity to present his Fourth Amendment claims to the state trial and appellate courts, the objectives of the exclusionary rule have been satisfied.").

Petitioner also argues that the initial entry into the room by one of the officers at the behest of the hotel manager was a warrantless search that violated the Fourth Amendment because the hotel manager could not legally provide consent to search. ECF Doc. 1 at 8 and ECF Doc. 49 at 7-8. That Fourth Amendment argument is also barred from federal habeas review. Although Johnson contends that trial counsel failed to address this point at the evidentiary hearing, Johnson extensively raised the issue on direct appeal discussing it on three pages of his appellate brief. ECF Doc. 27-3 at 161-63. Thus, the issue was presented to the state courts and fully adjudicated on the merits. The objectives of the exclusionary rule have been satisfied, and federal habeas relief is barred. *See Bradley*, 212 F.3d at 564–65. Petitioner is therefore not entitled to relief on this ground.

**C.     Ground Three: Trial Counsel Was Ineffective For Failing To Withdraw As Counsel**

Petitioner argues that after he filed two separate bar complaints against trial counsel Vipperman and received a notification that Vipperman had been suspended from the practice of law for thirty (30) days on August 28, 2014, Vipperman nonetheless continued to represent him all the way through trial. ECF Doc. 1 at 11-12. He argues that counsel was thereby constitutionally ineffective for failing to move to withdraw due to a known conflict. *Id.* at 11.

The Secretary responds that the state court's decision was not an unreasonable application of *Strickland v. Washington* because bar complaints do not *per se* create conflicts of interest and all the issues raised in the bar complaints were the same as those raised and addressed in the *Nelson* hearing and found to be meritless. ECF Doc. 27 at 26-27. In his reply, Johnson counters that "the numerous deficient acts, and the sham suppression hearing constitute[] an actual conflict of interest sufficient to impugn this unjust criminal conviction." ECF Doc. 49 at 10.

This issue was raised in Johnson's 3.850 motion. Because the First DCA affirmed the denial of Johnson's Rule 3.850 Motion without written opinion, the undersigned will "look through" that decision to the state court's order denying Johnson's 3.850 motion. *See Wilson*, 138 S. Ct. at 1192. The state court addressed this claim as Ground 1 of Johnson's 3.850 motion and stated that,

> Here, none of the factual claims raised under this ground constitute an
> actual conflict of interest. First, counsel advised the trial court that none

of Defendant's *pro se* motions had any merit. *See* Nelson Hearing Transcript. Second, the legal issue raised in Defendant's *pro se* motion to dismiss, which Defendant wanted counsel to file, is essentially the same legal issue raised in the motion to suppress that counsel filed, which was denied. *See* Motion to Suppress; Order Denying Motion to Suppress. Third, Defendant's filing of a bar complaint against his counsel did not automatically create a conflict of interest requiring the appointment of substitute counsel. *Gaines v. State*, 706 So. 2d 47, 49 (Fla. 5th DCA 1998). And, the issues raised in the complaint were the same as those addressed by the court during the Nelson hearing and found to be meritless. For these reasons, the Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit. ECF Doc. 27-3 at 272-73.

The state court's determination was not contrary to, or involved an unreasonable application of, clearly established Federal law, and was also not based on an unreasonable determination of the facts. *See Wilson*, 138 S. Ct. at 1992. "A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." *United States v. Rodriguez,* 982 F.2d 474, 477 (11th Cir.1993). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980). The possibility of conflict is not enough; a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. *Id.* at 350.

The Eleventh Circuit has distinguished an actual conflict from a potential one:

We will not find an actual conflict [of interest] unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests. . . . Appellants must make a factual

showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.

*Smith v. White,* 815 F.2d 1401, 1404 (11th Cir.1987) (quoting *Barham v. United States,* 724 F.2d 1529, 1532 (11th Cir.1984), *abrogated on other grounds, as recognized by McConico v. Alabama,* 919 F.2d 1543, 1546 (11th Cir. 1990)).

In *Mickens v. Taylor,* 535 U.S. 162, 172 n. 5 (2001), the Supreme Court clarified that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Thus, while a defendant who establishes an actual conflict of interest does not need to show prejudice (that the result of the trial would have been different without the conflict of interest), he still must show "that the conflict had some adverse effect on counsel's performance." *McConico,* 919 F.2d at 1548.

To show adverse effects, a defendant must satisfy three elements: "(1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." *Pegg v. United States,* 253 F.3d 1274, 1278 (11th Cir. 2001). The third element requires a defendant to "establish that the alternative defense was inherently

in conflict with or not undertaken due to the attorney's other loyalties or interests."
*Freund v. Butterworth*, 165 F.3d 839, 860 (11th Cir. 1999).

Johnson fails to articulate the plausible alternative strategies that counsel should have taken. A comparison of Johnson's *pro se* motion to dismiss filed August 11, 2014, and his motion to suppress filed on September 3, 2014, at ECF Doc. 27-1 at 96 and 104, with the motion to suppress filed by counsel on December 12, 2014, ECF Doc. 27-1 at 128, reveals that the counseled motion of December 12 presented each of the issues sought to be raised by Johnson. Also, as the trial court stated, each of the other motions requested by Johnson prior to trial were addressed at the *Nelson* hearing and found to be without merit.

In short, Johnson has not demonstrated any alternative strategy that counsel should have pursued and therefore cannot argue that said alternative strategy was reasonable or that the failure to pursue it was related to a conflict suffered by counsel. Therefore, he is not entitled to federal habeas relief on this ground.

## IV.    CONCLUSION

For the reasons stated above, the undersigned finds that Johnson is not entitled to habeas relief on any of the grounds raised in the petition and recommends the petition be DENIED.

### A.    Evidentiary Hearing

The undersigned also finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether

such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Additionally, this Court must consider the deferential standards prescribed by § 2254, particularly where the state court's factual and credibility determinations are made after an evidentiary hearing. *See id.* Petitioner has not met the burden to establish the need for a federal evidentiary hearing. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011), *cert. denied*, 565 U.S. 1120 (2012).  The pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034 (2004).

### B.    Certificate Of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.     The clerk is directed to terminate the motion at ECF Doc. 49 because it was denied as moot by the Order at ECF Doc. 50.  The motion for clarification at ECF Doc. 53, is GRANTED to the extent that the Court clarifies that the undersigned has considered the arguments in ECF Doc. 49 in preparing this Report and Recommendation.

Additionally, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Johnson,* 2014-CF-1062-A, in the Eighth Judicial Circuit, in and for Alachua County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 22nd day of June, 2020.

_/s/ Hope Thai Cannon_

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.